FORET, Judge.
This is a suit by an attorney against his former client’s estate for expenses incurred during the time of representation for litigation for which he was retained as counsel. Plaintiff, R.C. Edwins, represented Clarence Richard, a Jones Act seaman. Following settlement of the case, Edwins sued defendants, Succession of Clarence Richard, et al, seeking recovery of expenses, costs, and advances. Trial on the merits resulted in favor of defendants. Judgment was rendered June 26, 1985. A motion for a new trial was filed and denied ex parte.
The sole issue on appeal is whether or not the trial court erred in ruling that Edwins did not carry his burden of proof.
The trial court has handed down excellent reasons for judgment on the pivotal question of proof of the facts involved, and we take the liberty of adopting them as our own.
After disposing of in limine matters, which are not involved in this appeal, the trial court opinion continues:
“Now, that brings us down, then, to the merits of the case, and the question of whether or not Mr. Edwins is entitled to recover any additional monies from the Richard’s.
“Under the contract of employment, which I have referred to, there is no doubt that Mr. Richard agreed to repay Mr. Edwins for necessary costs and expenses of the *1091 litigation, Court costs, depositions, investigations, photographs, medical reports, medical bills, services of experts and so forth.
“The question is whether or not he has, he being the plaintiff, Mr. Edwins, has proven by a preponderance of the evidence the amounts that he claims in this suit.
“Obviously when a client signs a contract, such as was signed by Mr. Richard in this case, agreeing to pay a contingent fee of X percent of recovery plus expenses, the agreement to pay expenses is not a blank check kind of arrangement. The expenses must be necessary and they must be reasonable, and they must be established.
“In this case I find from the evidence, or perhaps more properly, from the lack of evidence, that Mr. Edwins simply has not carried the burden of proof required of the plaintiff in a case of this kind. He has not established with any degree of certainty what medical — excuse me, what expenses he incurred.
“Now, I don’t question but what he probably had some expenses that would be ordinarily recoverable type expenses. The problem here is that he has not furnished me any kind of documentation.
“When a person in the position of Mr. Edwins is claiming reimbursement of incurred expenses, and when there is a denial of any indebtedness for such expenses, it is incumbent on the person making the claim to support the claim with whatever documentation may be available, if any, or whatever other proof, oral testimony or otherwise, that might sustain the burden.
“I might analogize this somewhat to the Internal Revenue Service requirements. If you itemize this certain expenses on your income tax return, and the IRS comes in to check you and audit you, saying, ‘All right, you’ve claimed this. Where is your proof of it?’, they’re going to want something to back up what you are claiming.
“Now, what type of proof you have to have depends to a large extent on what you’re claiming. But there are so many things here that Mr. Edwins is claiming that I would think, based on my general knowledge of the practice of law, that there should be records on them that would be easily proven as far as what the bill was and what his payment was.
“Any of the deposition costs, for instance, presumably he got a bill from the Court Reporter if he got a copy of a deposition, if the other side didn’t pay the cost of it, and if he paid it, he should have a cancelled check.
“Now, it’s not asking too much of a lawyer to present to the Court, where there is a challenge of the items claimed, some documentation of what he is claiming, the bill and his payment of it. Because if he’s billed and he’s not paid it, he probably is not entitled to recover it.
“I might note here, and in connection with one of these depositions, Mr. Edwins was billed repeatedly by a Court Reporter, and he did not pay it apparently. I’m having trouble finding and putting my hand on that particular bill. And he referred the Court Reporter to Mr. Greenwald to submit the bill to. So there’s nothing in the record that I can determine that Mr. Edwins actually paid the bill that I’m referring to, and that, for some reason or other I can’t seem to put my hands on at the moment.
“There were two deposition bills that I noted. One was for a hundred and thirty-five dollars, and that was a bill that was sent by Mrs. Louise Talley for the deposition of Dr. E.R. Brown. But the bill was addressed to Mr. Earl Pitre, who was the defendant’s attorney, and there is not any indication from any material that I have that Mr. Edwins paid this deposition bill.
“This is just an example of the kind of problem that I’ve run into in looking through these bills.
“Another deposition bill was a hundred and thirty-eight dollars and sixty cents from Southwest Reporters, and that’s the bill, I believe, that — here it is — Mr. Edwins, after being billed a number of times by Southwest Reporters, wrote a note on the bottom and said, T always pay my firm’s bills, but Joseph W. Greenwald has saw fit to run *1092 this case for me, and his office is in Shreveport, and I think he’s a proper party to dun for the bill.’
“Well, I don’t know whether Mr. Edwins ever paid this bill or whether Mr. Green-wald did or whether it’s ever been paid. But again, there’s nothing in the record to support a claim for that item, if it is one that is claimed by Mr. Edwins.
“He claims two hundred and thirty telephone calls at two dollars each. Well, I don’t think that is sufficient proof. If you’re going to claim telephone calls and there’s a denial by the other side, you have to show what the calls were for and the cost of those. You’re not entitled to just lump it all together under the heading of phone calls, as was done here.
“Copies of medical reports and depositions. There is no substantiation of any payments by Mr. Edwins to anyone for copies of medical reports and depositions.
“Research on the computer. Again, no supporting documentation.
“Charge by Dr. Pink to review medical charts and conference calls. Again, no bill that I can find from Dr. Pink or any payment by Mr. Edwins to Dr. Pink of four hundred and eighty-seven dollars and fifty cents or any amount close to that.
“Again, research, two hours on West’s Law Computer, a hundred and seventy-five dollars an hour. There are no supporting documents for that charge. I don’t doubt that Mr. Edwins made a few trips. He and Mr. Robertson both indicated that they did. But I was not given any mileage specifically. The meals that were claimed, motel bills, none of those items are documented.
“And there’s another thing that concerns me, and I have to go back to the transcript with Judge Hunter. In the discussion about the attorney fees between Mr. Ed-wins, on the one hand, and Mr. Greenwald and Mr. Bishop, on the other, and it’s pretty obvious from the transcript that they didn’t see eye-to-eye on the handling of the fee, after some discussion of a break-down, the — or not one-third, the discussion that the fee would be divided by alloting [sic] twenty-three thousand, three hundred and thirty-three dollars and thirty-three cents to Mr. Edwins, and ten thousand dollars to Mr. Bishop and Mr. Greenwald, Mr. Edwins had indicated some concern about that.
“Judge Hunter said, ‘Mr. Greenwald, have you and Mr. Edwins agreed on how the thirty-three and a third percent fee is to be divided?’ Mr. Greenwald said, ‘Your Hon- or, and I suggested on the phone conversation I think a very simple division would be for Mr. Bishop and I to take a third of the third, and Mr. Edwins to take two-thirds.’
“Court said, ‘Is there any disagreement about that?’ Mr. Edwins said, ‘I thought that was a little heavy because I am going to eat about five hundred dollars worth of expenses on this anyway.’ And Mr. Green-wald retorted and said, ‘I’m going to eat about a thousand.’ And Mr. Edwins said, ‘Well, when I was over here — ’And then Judge Hunter cut in, ‘If you all can’t agree, I will just write you a check for that amount.’
“Now, what he was saying there is that he was threatening to see that a check for thirty-three thousand, three hundred and thirty-three dollars and thirty-three cents was written to Mr. Edwins, Mr. Greenwald and Mr. Bishop jointly, so that they would fight it out among themselves. That’s the way I interpret that language.
“But it’s a little troublesome to me in light of what Mr. Edwins is claiming here, something in excess of six thousand dollars, and yet, before Judge Hunter he indicated that he was going to eat five hundred dollars worth of expenses.
“Now, that isn’t definitive, but it is suggestive that he, on January the 10th, he wasn’t prepared to say that he was owed as much as six thousand plus dollars. He had just talked about the twenty-nine hundred and some odd dollars that he was going to be reimbursed, and I get the impression that he might have had another five hundred dollars from his comment here.
“So that doesn’t square with what he has filed in this Court, nor does it — nor can I reconcile P-4 with the yellow offering that *1093 was introduced in evidence as, I believe, maybe P-12. Many of the same items appear on both documents, but they’re not altogether consistent, and I cannot determine from one or the other what may have actually been the expenses incurred or under what circumstances.
“I cannot, for instance, decide whether when he says two discussions with Dr. Patheliska, Urologist, for a hundred dollars, whether that mean’s [sic] he’s charging a hundred dollars for his time, or whether that’s what he paid the doctor for conference time, and if so, whether there’s —where there’s any documentation of a bill by the doctor for that amount. If it was just Mr. Edwins’s [sic] time, that’s what the contigent [sic] fee is intended to recover. So many of these things that I heard talked this morning, that’s what the fee is all about.
“And for instance, the research. As far as I’m concerned, if a lawyer takes a case on a one-third basis, and he wants to get on a computer and let it do his research, that’s coming out of his one-third, in my estimation, and as far as my Court is concerned, I don’t think that’s a — now, there may be some exceptions to that under unusual circumstances. But a lawyer who takes a case and is going to get a third of recovery, he owes some services to his client.
“Now, I’m not suggesting Mr. Edwins didn’t render some services, but I am questioning whether he was entitled to charge extra amounts for some of the things that were done here, and if you choose to get a paralegal involved in it, to do things that the lawyer normally would do and service, that also raises a question.
“So the bottom line is that there has been a failure of proof here by Mr. Edwins to substantiate his claims. I simply do not find that he has carried the burden of proof in this case in order to make a recovery.”
For the foregoing reasons, we affirm the judgment of the trial court dismissing plaintiff’s suit. Costs of this appeal are assessed against plaintiff-appellant, R.C. Edwins.
AFFIRMED.